RICHARD E. EMERSON AND JACQUELINE A. EMERSON v. GEORGE
G. CARRAS AND CARRAS REALTY COMPANY

No. 7626SC745

(Filed 4 May 1977)

1. **Boundaries § 10.2; Vendor and Purchaser § 3— latent ambiguity —
admissibility of parol evidence**

In an action to recover a sum of money as a refund or rebate
of the purchase price of property purchased by plaintiffs from
defendant where the sales contract specified that plaintiffs were pur-
chasing "2927 Sharon Road . . . including house, lot and all improve-
ments thereon," the sales contract contained a latent ambiguity, and
the trial court therefore did not err in allowing parol evidence to show
that plaintiffs understood and were told that the lot had dimensions
of 213 feet by 201 feet and contained about one acre while the lot
in fact had a front footage of 106.5 feet and contained approximately
one-half acre.

2. **Contracts § 25.1— breach of contract — sufficiency of allegations**

In an action to recover a sum of money as a refund or rebate of
the purchase price of property purchased by plaintiffs from defend-
ant, plaintiffs' complaint sufficiently alleged the existence of a con-
tract, the inability of defendant to perform the contract, and that
plaintiffs were damaged by reason of the failure and inability to per-
form, and defendants recognized a cause of action for breach of
contract when they filed their answer asserting the defenses of
accord and satisfaction and rescission; accordingly, it was not error
for the trial judge to permit the case to go to the jury on the theory
of breach of contract.

3. **Cancellation and Rescission of Instruments § 4— purchase of property
— size of property — no mutual mistake**

In an action to recover part of the purchase price of a piece of
property sold by defendants to plaintiffs where plaintiffs bought a
lot about half as large as they thought they were buying, defendants'
contention that plaintiffs' evidence disclosed a mutual mistake is with-
out merit, since there was sufficient evidence of a mutual meeting of
the minds to submit the issue to the jury.

4. **Appeal and Error § 50— requested instructions denied — similar in-
structions given — no error**

The trial court in a breach of contract action did not err in deny-
ing defendants' request for instructions on mutual mistake where the
instructions given by the court embodied those requested by defend-
ants, though defendants' language was not used.

5. **Appeal and Error § 50.3— improper jury charge — error cured**

Misstatement of the evidence by the trial court during the jury
charge was not prejudicial to defendants where the error was called
to the court's attention, the court referred the exhibit in question to
the jury, and the court directed the jury to use their own recollection.

6. **Appeal and Error § 48— hearsay testimony admitted — subsequent similar testimony — no prejudice**

> Though evidence admitted by the trial court was clearly hearsay, defendants were not prejudiced by its admission, since defendants subsequently offered the same evidence themselves.

APPEAL by defendants from *Thornburg, Judge*. Judgment entered 17 June 1976, Superior Court, MECKLENBURG County. Heard in the Court of Appeals 16 February 1977.

Plaintiffs, by this action, sought to recover from defendants the amount of $13,500 as a refund or rebate of the purchase price of property purchased by them from defendant George G. Carras. Their complaint, in substance, alleges the following: Carras owned property known as 2927 Sharon Road in Charlotte, being all of Lot 1, Block 3, of the Subdivision known as Forest Hills as shown on the map recorded in Map Book 4 at page 273 in the Mecklenburg County Public Registry. On or about 7 April 1975 plaintiffs and Carras entered into a written contract for the purchase and sale of this property. The contract attached to the complaint and incorporated therein by reference, described the property as "2927 Sharon Road Charlotte, North Carolina, including house, lot and all improvements thereon." Purchase price was designated as $76,000. Carras had entered into an exclusive listing contract with defendant Carras Realty Company as his agent in securing a purchaser for the property, which contract was in effect at the time of negotiations for and purchase of the property. The contract was also incorporated by reference in the complaint and it described the lot as being "213 X 201.67 X 125 X 226" in size, and as a "1 acre lot w/running brook at rear." Prior to plaintiff's execution of the contract with Carras, Carras Realty Company, as agent for defendant Carras, through its duly authorized employee and agent, Steve McIntosh, represented to plaintiffs on a number of occasions that the property had a frontage on Sharon Street of approximately 200 feet and had other dimensions set forth in the exclusive listing agreement which he summarized as approximately 200 feet by 200 feet by 200 feet by 200 feet or approximately one acre. Contrary to those assurances, the property had a frontage on Sharon Road of 106.5 feet, a rear lot line of 125.1 feet and contained approximately one-half of the acreage described by defendants. The representations made were false, made with knowledge or made recklessly without knowledge, made with intention that

plaintiffs would rely on them and plaintiffs did rely on them. Neither defendants, prior to the execution of the contract, advised plaintiffs of the discrepancies in the size of the lot. Defendant Carras is able to convey only a portion (approximately ½ of the acreage) of the property referred to in the contract, and the property which he is unable to convey has a fair market value of $13,500. Plaintiffs asked for a refund of $13,500, from defendant Carras, or a judgment in that amount against both defendants.

Defendants answered, admitting the execution of the contract but denying that any real estate has been conveyed to plaintiffs pursuant thereto. They admitted the Exclusive Listing Agreement contained an error in the boundary description which was the result of an inadvertent error in copying the bounddaries of the property from a tax map. Plaintiffs were not informed of the error prior to 7 April 1975 because neither defendant was aware of the error. All allegations of intentional misrepresentation were denied. Defendants denied that defendant Carras was unable to convey all the property referred to in the contract.

By further answer, defendants averred that the contract set a closing date of on or before 10 May 1975; that defendant Carras discovered the error in the listing contract on or about 1 April 1975 and immediately informed plaintiffs by accompanying Richard Emerson to the property and pointing out the correct lot boundaries; that even though plaintiffs occupied the house on or about 1 April 1975, they informed defendant Carras that they did not intend to purchase and they agreed to a mutual "recession" of the contract; that about two weeks later, plaintiffs informed defendant Carras that they had looked at other houses but had not found anything they liked as well "nor which was as good a bargain," so the plaintiffs and defendant Carras agreed orally for the purchase of the Sharon Road property and sale was closed 21 May 1975 pursuant to the oral contract.

As affirmative defense, defendants asserted accord and satisfaction, estoppel, and waiver.

At trial defendants moved for directed verdict at the close of plaintiffs' evidence. The motion was allowed as to the cause of action for fraud and misrepresentations but denied as to the cause of action for breach of contract. The defendants' motion

for directed verdict at the close of all the evidence was denied. The court submitted three issues:

> "1. Did the plaintiffs and the defendant George G. Carras enter into a contract for the purchase and sale of a lot located at 2927 Sharon Road, bearing dimensions of 213 X 201 X 67 X 125 X 226 feet, as alleged in plaintiffs' complaint?

> 2. Did defendant breach his contract with plaintiffs by failing to convey the lot referred to in Issue No. 1?

> 3. What amount of damages are plaintiffs entitled to recover of defendant?"

The jury answered the first two issues "Yes" and the third "$6500.00." Judgment was entered against defendant Carras. Both defendants appealed. Both defendants moved for judgment notwithstanding the verdict and, in the alternative, for a new trial. By order entered 30 June 1976, the court denied both motions and ordered that judgment be entered on the verdict for the plaintiffs. Defendants excepted.

*Farris, Mallard and Underwood, P.A., by Ray S. Farris, for plaintiff appellees.*

*Sanders and London, by Richard A. Lucey, for defendant appellants.*

MORRIS, Judge.

[1]  The sales contract specified that plaintiffs were purchasing "2927 Sharon Road Charlotte, North Carolina, including house, lot and all improvements thereon." The court allowed parol evidence to show that plaintiffs understood and were told that the lot had dimensions of 213 feet X 201 feet and contained approximately one acre. This defendants assign as error, the exceptions taken to the overruling of their objections being grouped under assignment of error No. 1. We note at the outset that objections appear at only four places in the record and that interspersed at various places between these objections is testimony of the same import without objection raised. Testimony to the effect that plaintiffs thought they were buying a lot with 213 feet frontage and only got 106 feet frontage was elicited from plaintiff by defendants on cross-examination. Be that as it may and regardless of whether defendants have waived their objection

to this testimony, we are of the opinion that it was admissible. Defendants urge that there was no ambiguity, latent or patent, with respect to what was the subject of the contract and that, because parol evidence cannot be allowed to vary, add to, or contradict a written instrument, the evidence was not admissible. We do not disagree with this legal principle, but we do not agree that its application to this case is as crystal clear as defendants would have us believe. We agree that the contract does not contain a patent ambiguity. However, we are of the opinion that it does contain a latent ambiguity.

"The term 'latent ambiguity' is defined to mean an ambiguity which arises not upon the words of the instrument, as looked at in themselves, but upon those words when applied to the object or subject which they describe. 3A C.J.S., Ambiguity, p. 410. In *Miller v. Green,* 183 N.C. 652, 654, 112 S.E. 417, 417-18, (1922), our Supreme Court said:

" . . . [I]f there is a latent ambiguity . . . preliminary negotiations and surrounding circumstances may be considered for the purpose of determining what the parties intended —*i.e.,* for the purpose of ascertaining in what sense they used the ambiguous language, but not for the purpose of contradicting the written contract or varying its terms. A latent ambiguity may arise where the words of a written agreement are plain, but by reason of extraneous facts the definite and certain application of those words is found impracticable. (Citations omitted.)"

*See also,* Restatement of Contracts, § 242 (1932); *Logue v. Von Almen,* 379 Ill. 208, 40 N.E. 2d 73 (1941).

Here the evidence to which defendant objects shows that the handwritten listing sheet, which he says he prepared, shows the property designated thereon as 2927 Sharon Road as being a one-acre lot having dimensions of 213 feet X 201.67 feet X 125 feet X 226 feet. Prior to the execution of the agreement and during negotiations for the sale and purchase of the property, plaintiffs were shown a copy of the typed listing, prepared from the handwritten listing, which gave the same dimensions. The evidence also disclosed that McIntosh, agent for defendant Carras, referred to the listing sheet and indicated to plaintiffs that the lot had a frontage of 213 feet and contained approximately one acre. Plaintiff further testified that prior to 30 April 1975, no one told him that the lot dimensions were less than those

Emerson v. Carras

shown on the typed listing sheet and as indicated by Mr. Mc-Intosh. The complaint alleged, on the other hand, that the lot known as 2927 Sharon Road had a front footage of 106.5 feet and contained approximately one-half acre. Testimony at trial revealed this to be true.

It, therefore, appears that a latent ambiguity did exist. The evidence to which defendant objects was admissible, under the circumstances of this case, and this assignment of error is overruled.

Defendants next contend, by assignments of error two and three, that the court erred in denying their motions for directed verdict and for judgment notwithstanding the verdict or a new trial. They base these contentions on two grounds: first, that the complaint does not state a cause of action for breach of contract and the motion for directed verdict as to the cause of action in tort was granted; and, in the alternative, that the plaintiffs' evidence disclosed a mutual mistake, and the issue of whether there was a contract should not have been submitted to the jury.

[2]   With respect to the first contention, while it is true that plaintiffs alleged that defendants misrepresented the size of the lot, we are of the opinion that the complaint sufficiently alleged the existence of a contract, the inability of defendant Carras to perform that contract, and that plaintiffs were damaged by reason of the failure and inability to perform. We note, also, that defendants by their answer asserted the defenses of accord and satisfaction and rescission. These are proper defenses in a contract action. Defendants must have recognized a cause of action for breach of contract when they filed their answer. Certainly, they can claim no element of surprise, nor that they were denied a fair opportunity to defend their case. Accordingly, it was not error for the trial judge to permit the case to go to the jury on a theory different from that alleged in the complaint. *Roberts v. Memorial Park*, 281 N.C. 48, 187 S.E. 2d 721 (1972).

[3]   With respect to the mutual mistake contention, the evidence for plaintiffs tends to show that plaintiffs were of the opinion that the lot contained the acreage shown on the listing sheet and they had the dimensions shown thereon. The uncontradicted evidence was that this listing sheet was prepared by defendant Carras, and that his agent was of the opinion that the listing sheet correctly described the property. Although defend-

ant Carras testified that when he entered into the agreement he did not have any intention of selling a lot having those dimensions, whether he was aware of the true size of the lot at the time was for the jury. We think there was sufficient evidence of a mutual meeting of the minds to submit the issue to the jury. These assignments are, therefore, overruled.

Defendants' fourth assignment of error is directed to the court's charging the jury in a manner which allowed the jury erroneously to believe that plaintiffs had instituted an action for breach of contract. The view we have taken with respect to assignments of error two and three requires that assignment of error four be overruled.

[4] Defendants filed a written request for instructions on mutual mistake. The request was denied and defendants excepted. This exception is the basis for defendant's assignment of error five. The court, in instructing the jury, defined a contract as " . . . a mutual agreement between two or more competent parties based upon a sufficient consideration to do or not to do a particular thing." He further charged that there could not be a contract " . . . unless the parties assent to the same thing in the same sense at the same time," and that there must be "mutuality of agreement." He then instructed the jury that " . . . this is where the dispute arises. The plaintiffs saying and contending that there was a mutual agreement, and the defendant denying that there was a mutuality of agreement." The jury was precisely instructed that if they should find that at the time the agreement was signed the defendant intended to describe the lot as one having 106 feet frontage, they must answer the first issue "no." It is clear that the jury could not have misunderstood the instructions. They embodied the requested instructions, even though not in that language. Nor is the court required to use the precise language of the tendered instruction " . . . so long as the substance of the request is included in language which doesn't weaken its force." *King v. Higgins,* 272 N.C. 267, 270, 158 S.E. 2d 67, 69 (1967).

The court further instructed, with respect to the rights of the parties, in the event the jury should find a contract existed, that should the purchaser find that the seller could not convey the amount of property described in the contract, he could elect to affirm the contract and retain whatever property he received thereunder; that affirmance would end the right to

rescind, but would not prevent the affirming party from recovering from the seller the difference in value of the property sold as it was and as it would have been had the seller been able to convey the amount called for in the contract. Defendants do not except to this portion of the charge. It correctly states the law of this State. *See Goldstein v. Trust Co.*, 241 N.C. 583, 86 S.E. 2d 84 (1955), and cases there cited.

[5]   Defendants contend by their sixth assignment of error that prejudicial error was committed by the court when, during his instructions to the jury, he stated: " . . . [I]f the plaintiff has satisfied you . . . that on or about the 7th day of April, 1975, Mr. McInosh, who at the time was acting in behalf of Mr. Carras, executed a contract for the sale . . . " There is no question but that defendant Carras executed the contract. This was admitted in defendants' answer, and was not at issue at the trial. At the end of the charge, the court told the jury that it had been called to his attention that he had said the contract was signed by McIntosh, that the attorneys for the parties had called his attention to defendants' Exhibit 4 (the contract in question) as having been signed by Mr. Carras, and that he was sure the jury's recollection as to that was proper. While the court was in error, we fail to perceive error sufficiently prejudicial to warrant a new trial. The error was called to his attention. He was referred to the exhibit and referred to that exhibit to the jury, directing them to use their own recollection. This assignment of error is overruled.

[6]   By their seventh assignment of error defendants urge that they were prejudiced by the court's allowing hearsay testimony as to the handwriting on plaintiff's Exhibit 4, the sales listing sheet. Plaintiff Emerson was allowed to testify that Mr. McIntosh told him the listing sheet was in defendant Carras's handwriting. Defendant Carras, during his testimony, identified the listing sheet and stated that it was in his handwriting. While the testimony was clearly hearsay, defendants have not been prejudiced. This assignment is without merit.

Finally, defendants raise objection to the court's allowing plaintiff Emerson to testify that Mr. McIntosh told him that " . . . [t]hey would probably take some property off the front of your property." Defendants contend this was irrelevant hearsay testimony and prejudicial to defendants. They do not give any indication of the manner in which they were prejudiced.

While the court may have ruled erroneously, every erroneous ruling in the admission or exclusion of evidence does not *ipso facto* entitle the appealing party to a new trial. He must show that he was prejudiced and that the erroneous ruling probably influenced the jury verdict. *Board of Education v. Lamm,* 276 N.C. 487, 173 S.E. 2d 281 (1970), and cases there cited. This assignment of error is overruled.

No error.

Judges VAUGHN and MARTIN concur.