MOUNTAIN FEDERAL LAND BANK AND SOUTH ATLANTIC PRODUCTION CREDIT ASSOCIATION v. FIRST UNION NATIONAL BANK OF NORTH CAROLINA

No. 8928SC114

(Filed 17 April 1990)

**Contracts § 3 (NCI3d); Uniform Commercial Code § 39.1 (NCI3d) — letter of credit — not issued — action by third party — summary judgment for defendant**

Plaintiffs were not entitled to summary judgment, and summary judgment should have been granted for defendant, in an action to recover $108,000 pursuant to a written contract where First Union had loaned $350,000 to Earl Stewart, obtaining a note and security interest in an apple crop; plaintiffs' predecessor loaned the Stewarts funds with the real property as collateral; plaintiff declared all of its notes in default and a foreclosure order was entered against the Stewarts; a consent judgment was entered settling the disputed issues and allowing the trustee to conduct a sale; the parties agreed to a stipulation by which First Union was to issue a loan and letter of credit to the Stewarts in a total amount of $108,000 in exchange for plaintiff's consent to stay foreclosure in a pending federal court action; the Stewarts did not respond to the letter of commitment and never applied for the letter of credit; First Union did not issue a standby letter of credit; and plaintiffs were not paid any sums under the agreement. The provision permitting future agreement between First Union and the Stewarts renders the contract between First Union and plaintiffs void for indefiniteness and invalid as a matter of law.

**Am Jur 2d, Contracts § 75.**

APPEAL by defendant from judgment entered 1 September 1988 by *Judge W. Terry Sherrill* in BUNCOMBE County Superior Court. Heard in the Court of Appeals 13 September 1989.

*Carter & Kropelnicki, P.A., by Steven Kropelnicki, Jr.,* for plaintiff-appellees.

*McGuire, Wood & Bissette, P.A., by Joseph P. McGuire,* for defendant-appellant.

GREENE, Judge.

Defendant appeals the trial court's entry of summary judgment for plaintiffs in plaintiffs' action to recover $108,000.00 plus interest, pursuant to a written contract.

Defendant First Union National Bank ("First Union") is a North Carolina bank. Plaintiff Mountain Federal Land Bank ("Mountain Federal") is a federal bank doing business in North Carolina, and successor to Federal Land Bank of Columbia. Plaintiff South Atlantic Production Credit Association ("Association") is a corporate successor to Mountain Federal.

This suit involves loans on real property owned by Earl D. Stewart and Frances M. Stewart. Earl and Frances Stewart leased the property to Gerald L. and Glenn G. Stewart (the "Stewarts"), who used the property for apple orchards.

On 26 August 1980, First Union loaned $350,000.00 to Earl Stewart, obtaining a note and security interest in the apple crop growing on the property. Earl and Frances Stewart also executed an unconditional guaranty agreement for the note.

Federal Land Bank agreed to lend the Stewarts funds, using the real property as collateral. The Stewarts also cosigned a note evidencing their repayment obligation. On 11 September 1981, all of the Stewarts executed two deeds of trust on the property, to secure two notes in the total amount of $1,244,000.00 payable to Federal Land Bank of Columbia, which was succeeded in interest by Mountain Federal and Association, respectively, who each took one note and deed of trust. On 15 December 1982, all of the Stewarts executed a note to Association in the principal amount of $5,070.00. On 12 May 1983, all of the Stewarts executed a note to Association in the principal amount of $300,000.00. On 24 September 1984, all of the Stewarts executed a note in the principal amount of $18,015.00,

payable to Association. Plaintiffs declared all of these notes in default on 15 April 1987.

On 10 August 1987, the clerk of superior court entered an order of foreclosure against the Stewarts, who appealed the order. On 24 August 1987, all parties consented to judgment settling the disputed issues on appeal and allowing the foreclosure trustee to conduct a sale of the property. In exchange for plaintiffs' consent to stay foreclosure and federal court action on a pending suit until 31 January 1988, the parties agreed that First Union would be involved in payment of interest on the notes during the stay of foreclosure.

After negotiation, the parties agreed to these provisions, which they embodied in a document denominated a "Stipulation:"

10. . . . .

B. First Union National Bank shall issue its Standby Letter of Credit in favor of South Atlantic Production Credit Association (SAPCA) and Mountain Federal Land Bank (MFLB) jointly. This Letter of Credit shall be called upon in the event the Stewarts fail to pay the sum of $18,000.00 to the SAPCA and MFLB on the appointed due date and First Union is notified in writing of such default. Under the terms of this Letter of Credit, only the monthly payment is collectable and these events are limited to payments due August 31, 1987, September 30, 1987, October 31, 1987, November 30, 1987, December 31, 1987 and January 31, 1988. The lenders shall apply those payments to accrued interest on the notes. First Union National Bank acknowledges that the agreement of SAPCA and MFLB to stay the foreclosure constitutes consideration for its obligation to make these payments, inasmuch as a foreclosure would jeopardize First Union's security interest in the growing crop. As Additional [sic] consideration for First Union's agreement to make these payments, SAPCA and MFLB and the other undersigned parties do hereby stipulate and agree that the security interest of First Union in the apple crop now growing on the land covered by their deeds of trust and in any proceeds of that apple crop is superior to any claim of MFLB or SAPCA to that crop or those proceeds. The parties acknowledge that the principal amount secured by First Union's security interest is $350,000.00, plus accrued interest, plus the

advances which shall be made under the provisions of this subparagraph and interest on those advances.

. . . .

11. By entering into this stipulation neither the Stewarts nor either of them shall be deemed to have waived any legal or equitable claim which might properly be raised under the provisions of G.S. Section 45-21.34. The Stewarts acknowledge that an action is pending in the United States District Court for the Western District of North Carolina styled *Mountain Federal Land Bank, et al., vs. Earl D. Stewart, et al*, docket No. A-C-87-175, in which these lenders are plaintiffs and the Stewarts and the substitute trustee are defendants. With regard to that action, the parties agree:

A. On or before 31 August 1987 the Stewarts will acknowledge service of process in that action.

B. The parties to that action will request that the Presiding Judge stay further proceedings therein until 31 January 1988, without prejudice to any party. The Stewarts acknowledge that in entering into this stipulation, neither of the lenders has made any further concession to them with regard to the pending lawsuit, and if the court does not stay that action without prejudice, the lender's prosecution of that action shall not in any way be deemed a breach of this stipulation.

On 15 September 1987, First Union sent a "letter of commitment" to the Stewarts, for issuance of a loan and letter of credit in the total amount of $108,000.00. The letter stated that First Union would loan the Stewarts $18,000.00 and issue a letter of credit for $90,000.00 in behalf of the Stewarts, jointly payable to Mountain Federal Land Bank and Association. These amounts would be secured by all apple crops, apple inventory, and accounts receivable, and be unconditionally guaranteed by all of the Stewarts. The Stewarts did not respond to the letter of commitment, never applied for the letter of credit, and First Union did not issue a "standby" letter of credit. Plaintiffs were not paid any sums pursuant to the agreement.

On 23 September 1987, First Union notified plaintiffs' counsel that the Stewarts had not applied for the letter of credit, and First Union could not honor requests for interest payments until application and agreement, and that First Union "stands ready

MOUNTAIN FED. LAND BANK v. FIRST UNION NAT. BANK

[98 N.C. App. 195 (1990)]

to arrive at an agreement with the Stewarts which will permit it to issue this contemplated Standby Letter of Credit promptly." On 23 September 1987, plaintiffs telephoned notice of the Stewarts' default on the first interest payment and made demand on First Union.

On 2 December 1987, plaintiffs sued First Union, alleging that First Union anticipatorily repudiated Stipulation provision 10B by failing to pay the monthly interest payments after the Stewarts defaulted. Plaintiffs requested specific performance of the payments.

First Union answered, denying liability for the Stewarts' default because of an unperformed condition precedent to their performance, the Stewarts' failure to apply for the letter of credit. First Union also asserted the plaintiffs' failure to mitigate its damages by foreclosing or pursuing other damages against the Stewarts.

On 3 February 1988, plaintiffs filed the foreclosure agreement and the trustee sold the property.

First Union moved for summary judgment. Plaintiffs offered the affidavit of Mountain Federal's president, Jacob Grigg ("Grigg"). Grigg stated:

> [i]t is well understood in the banking industry that . . . the bank's commitment to issue a letter of credit necessarily *implies* the existence of a commitment by the customer to repay the bank . . . [a] commitment by a bank to issue a standby letter of credit operates as a guarantee that the account will be paid . . . [plaintiffs] acted in reliance on the commitment of First Union . . . to 'issue its standby letter of credit' . . . in accordance with the general usage of trade within the banking industry [the commitment to issue] would constitute the unconditional obligation on the part of First Union . . . to issue and honor the letter of credit [emphasis added].

First Union objected in writing to these assertions on evidentiary grounds and because Grigg was not qualified to testify about banking industry usage or practice. The trial court did not rule on First Union's motion.

In support of its motion, First Union submitted two affidavits, one from one of its officers, and one from an officer of another banking institution, to show that First Union's obligation under

a standby letter of credit arose only after the customer's application and the bank's acceptance of the application.

The court entered summary judgment for plaintiffs, citing the parties' stipulation that no material issue of fact existed.

---

The dispositive issue is whether Stipulation provision 10B was an enforceable contract of absolute guaranty between plaintiffs and First Union.

First Union asserts that provision 10B of the Stipulation with plaintiffs was a mere "agreement to agree," rather than a meeting of the minds as to the material terms of a contract. We agree with First Union's assertions.

> "One of the essential elements of every contract is mutual[ity] of agreement. There must be neither doubt nor difference between the parties. They must assent to the same thing in the same sense, and their minds must meet as to *all* the terms. If *any* portion of the proposed terms is not settled, or no mode agreed on by which they may be settled, there is no agreement." . . . A contract, and by implication[,] a provision, "leaving material portions open for future agreement is nugatory and void for indefiniteness." . . . Consequently, any contract provision . . . failing to specify either directly or by implication a material term is invalid as a matter of law.

*MCB Ltd. v. McGowan*, 86 N.C. App. 607, 608-9, 359 S.E.2d 50, 51 (1987) (emphases in original) (citations omitted) (construing a mortgage subordination provision).

The rule is that when the language of a contract is plain and unambiguous, construction of the language is a matter of law for the court. *Clear Fir Sales Co. v. Carolina Plywood Distributors, Inc.*, 13 N.C. App. 429, 430, 185 S.E.2d 737, 738 (1972). In determining the nature of a contract, we give the contract language the construction that the parties intended at the time of formation, as discerned from their writings and actions. *Walker v. Goodson Farms, Inc.*, 90 N.C. App. 478, 486, 369 S.E.2d 122, 126, *review denied*, 323 N.C. 370, 373 S.E.2d 556 (1988).

The language of Stipulation provision 10B plainly and unambiguously indicates that the parties intended to limit First Union's

obligation to indemnify plaintiffs to a "standby" letter of credit based on, in plaintiffs' terms, a "promise to issue a letter of credit."

A "standby" letter of credit functions "to indemnify the beneficiary in the event of breach by the customer of an obligation owed by [the customer] to the beneficiary. . . . [also] commonly called a . . . guaranty letter." 7 R. Anderson, *Anderson on The Uniform Commercial Code* § 5-102:15 (3d ed. 1985) (hereafter "*Anderson*"). An "indemnity" is a "collateral contract . . . by which one . . . engages to secure another against an anticipated loss . . . by the legal consequences of . . . forbearance on the part of one of the parties . . . [the] term pertains to liability for loss shifted from one person held legally responsible to another person." Black's Law Dictionary 692 (5th ed. 1979).

A letter of credit is essentially a contract between the issuer and the beneficiary, independent of the underlying 'contract between the customer and the beneficiary. *O'Grady v. First Union National Bank*, 296 N.C. 212, 232, 250 S.E.2d 587, 600 (1978).

> [T]he letter is merely one of three contracts . . . (1) a preliminary contract between the customer and the issuer that the issuer will issue a letter of credit to make payment *in accordance with the terms of the preliminary contract*, (2) the letter of credit by which the issuer *undertakes the obligation that he had agreed to assume by the preliminary contract*, and (3) an underlying contract between the customer and the beneficiary of the letter.

*Anderson*, at § 5-102:10 (emphases added). "The [UCC] does not impose any duty on a bank . . . to accept the customer's application and issue a letter of credit." *Id.*, at § 5-102:18.

Several sources govern letter-of-credit law, including Article 5 of the Uniform Commercial Code ("UCC"). *Sunset Investments Ltd. v. Sargent*, 52 N.C. App. 284, 287-88, 278 S.E.2d 558, 561, *review denied*, 303 N.C. 550, 281 S.E.2d 401 (1981), N.C.G.S. § 25-5-101-117 (1989). The UCC applies to letters encompassing certain types of "credits" set out in G.S. § 25-5-102(1)(a-c). The UCC defines a "credit" as

> an engagement by a bank . . . *at the request of a customer* . . . and within the scope of . . . G.S. 25-5-102 . . . that the issuer will honor drafts or other demands for payment upon compliance with the conditions specified in the credit. . . .

The engagement may be either an *agreement to honor* or a statement that the bank . . . is authorized to honor.

N.C.G.S. § 25-5-103(1)(a) (emphases added).

The Stipulation states that First Union "shall issue [a] Standby Letter of Credit in favor of" plaintiffs, as beneficiaries. It is evident that until an issuer (here, First Union) and a customer or principal (here, the Stewarts) formed the underlying 'preliminary contract,' no letter of credit contract could issue, because the letter was no more than the 'undertaking' of the preliminary agreement. Therefore, formation of the underlying 'preliminary contract' constitutes not only a material portion of the letter of credit contract, but is the substance of the letter's 'engagement' or 'undertaking,' and thus is a material portion provision 10B.

Review of the provision reveals that on its face the Stipulation left open and unsettled the future formation of the requisite 'preliminary contract' between First Union and the Stewarts, and provided no mode of ensuring execution of the 'preliminary contract.' As commercial business entities contracting with the Stewarts and First Union at arm's length, by their own affidavits familiar with letter-of-credit law, and as holders of a foreclosure order regarding the deeds of trust on which the Stewarts had defaulted, plaintiffs had at the time the parties executed the Stipulation the power to require that First Union and the Stewarts form the 'preliminary agreement' for the standby letter of credit contract *before* entering into the Stipulation to forbear from foreclosure.

We determine that the provision permitting future agreement between First Union and the Stewarts renders the contract between First Union and plaintiffs void for indefiniteness and invalid as a matter of law. Therefore, plaintiffs were not entitled to judgment as a matter of law against First Union on the invalid provision. Instead, First Union is entitled to summary judgment as a matter of law. N.C.G.S. § 1A-1, Rule 56(c); *N.C. Coastal Motor Line, Inc. v. Everette Truck Line, Inc.*, 77 N.C. App. 149, 151, 334 S.E.2d 499, 501, *review denied*, 315 N.C. 391, 338 S.E.2d 880 (1986) (any party is entitled to summary judgment as a matter of law).

Reversed.

Judges JOHNSON and EAGLES concur.